UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL A. HERNANDEZ,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,[1]<br><br>　　　　　Defendant. | Case No. CV 19-1299-AS<br><br>**MEMORANDUM OPINION**<br><br>**AND ORDER OF REMAND** |

For the reasons discussed below, it is hereby ordered that, pursuant to Sentence Four of 42 U.S.C. § 405(g), this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

On February 21, 2019, Plaintiff filed a Complaint seeking review of the Commissioner's denial of Plaintiff's applications

---

[1] Andrew M. Saul, Commissioner of Social Security, is substituted for his predecessor. See 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

for a period of disability and disability insurance benefits ("DIB"), and supplemental security income ("SSI"), respectively, under Titles II and XVI of the Social Security Act. (Dkt. No. 1). On July 23, 2019, Defendant filed an Answer and the Administrative Record ("AR"). (Dkt. Nos. 18-19). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 14-15). On December 23, 2019, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claims. (Dkt. No. 26). The Court has taken this matter under submission without oral argument. See C.D. Cal. C. R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On November 12, 2015, Plaintiff, formerly employed as a trunk crane operator and light truck driver (see AR 29, 60, 269, 307), filed his DIB and SSI applications alleging a disability onset date of January 1, 2014. (AR 239-48). Plaintiff's applications were denied on June 13, 2016. (AR 157-61). On June 28, 2016, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").[2] (AR 164-65). On January 23, 2018, ALJ Paul Coulter held a hearing where Plaintiff was represented by counsel and testified with the assistance of a Spanish-language interpreter. (See AR 51-65). The ALJ also heard testimony from vocational expert ("VE") Kristan

---

[2] It appears that there was no reconsideration of Plaintiff's applications prior to the hearing before the ALJ. (See AR 22).

Cicero. (See AR 60-63). On February 12, 2018, the ALJ issued a decision denying Plaintiff's applications. (See AR 22-31).

The ALJ applied the requisite five-step process to evaluate Plaintiff's case. At step one, the ALJ found that Plaintiff met the insured status requirements through December 31, 2015, and had not been engaged in substantial gainful activity since his alleged disability onset date of January 1, 2014. (AR 24). At step two, the ALJ found that Plaintiff's epilepsy/seizure disorder was a severe impairment.[3] (AR 24). At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of any of the listings found in 20 C.F.R Part 404, Subpart P, Appendix 1.[4] (AR 26).

Next, the ALJ found that Plaintiff had the following Residual Functional Capacity ("RFC")[5]:

---

[3] The ALJ found that Plaintiff's history of vision problem were non-severe and that Plaintiff's anxiety disorder and adjustment disorder do not cause more than minimal limitation in his ability to perform basic mental work activities and are therefore non-severe. (AR 24-25)

[4] The ALJ specifically considered whether Plaintiff meets the criteria of listing 11.02 (epilepsy), 2.03 (contraction of visual field), and 2.04 (loss of visual efficiency) and concluded that he did not.

[5] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R §§ 404.1545(a)(1), 416.945(a)(1).

3

[Plaintiff can] perform medium work[6] as defined in 20 C.F.R. 404.1567(c) and 416.967(c) in that [he] can lift/carry and push/pull 50 pounds occasionally and 25 pounds frequently; stand/walk for about 6 hours and sit for about 6 hours in an 8-hour day. Moreover, [Plaintiff] is capable of frequent postural limitations, frequent overhead reaching, and frequent handling/fingering. Further, [Plaintiff] should avoid all exposure to hazards, such as machinery and heights and should be precluded from jobs requiring driving.

(AR 26-27). At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work. (AR 29). Relying on the VE's testimony at step five, the ALJ found that Plaintiff, with his age (fifty-two on the alleged disability onset date), "marginal education," work experience, and RFC, can perform the following representative jobs existing in significant numbers in the national economy: store laborer (Dictionary of Occupational Titles ("DOT") 922.687-058), food service worker (DOT 319.677-014), and cleaner (DOT 323.687-010). (AR 29-30). Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from January 1, 2014, through the date of the decision. (AR 30).

---

[6] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

4

On January 10, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (See AR 1-4). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. See 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Administration's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**DISCUSSION**

Plaintiff contends that (1) substantial evidence does not support the ALJ's findings that Plaintiff can perform the work of

a store laborer, a food service worker, or a cleaner;[7] and (2) Plaintiff should be able to present and rely on vocational data from non-DOT sources such as the Occupational Outlook Handbook ("OOH"), the Occupational Information Network ("O*NET"), and the Occupational Requirements Survey ("ORS"). (See Joint Stip. at 4-25). After reviewing the record, the Court finds that the ALJ erred at step five, and remand is warranted for further proceedings to determine, based on reliable vocational data and VE testimony, whether there is a significant number of jobs available for Plaintiff in light of his language ability and other relevant factors.

**A.  Applicable Law for ALJ's Step-Five Finding**

At step five of the five-step process, the Commissioner has the burden to demonstrate that the claimant can perform some work that exists in "significant numbers" in the national or regional economy, taking into account the claimant's RFC, age, education, and work experience. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006); 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c). "In making this determination, the ALJ relies on the DOT, which is the [Agency's] primary source of reliable job information regarding jobs that exist in the national economy." Zavalin v. Colvin, 778 F.3d 842, 845-46 (9th Cir. 2015) (citation omitted); see 20 C.F.R. § 404.1566(d)(1) (noting that the Agency "will take administrative

---

[7] Plaintiff presents this as three separate issues, one for each job, but the Court addresses them together.

notice of reliable job information available from various governmental and other publications," including the DOT); SSR 00-4p, at *2 ("In making disability determinations, [the Agency relies] primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy."). The Agency may also take administrative notice of reliable job information available in other sources, such as the OOH, which is published by the Bureau of Labor Statistics. 20 C.F.R. § 404.1566(d)(2)-(5); 20 C.F.R. § 416.966(d)(2)-(5); Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005).

In addition to the DOT, the ALJ generally relies on the testimony of the VE to make the appropriate determination at step five. 20 C.F.R. § 404.1566(e); 20 C.F.R. § 416.966(e). An ALJ may call upon the VE to testify as to "(1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). In doing so, an ALJ "poses hypothetical questions to the [VE] that set out all of the claimant's impairments for the [VE's] consideration." Id. (citation omitted). When a hypothetical includes "all of the limitations that the ALJ found credible and supported by substantial evidence in the record," then the ALJ may properly rely on the VE's response. Bayliss, 427 F.3d at 1217-18; Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001) (testimony of qualified vocational expert constitutes substantial evidence); Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995) ("[T]he ALJ was within his rights to rely solely on the vocational expert's testimony.")

(quoting Conn v. Sec'y of Health and Human Servs., 51 F.3d 607, 610 (6th Cir. 1995)). Generally, an ALJ need not inquire into the foundation of the VE's testimony. See 20 C.F.R § 404.1566(c)(5)(e); SSR 00-4P; Johnson, 60 F.3d at 1435-36. Instead, a VE's "recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." Bayliss, 427 F.3d at 1218.

When there is an apparent conflict between the VE's testimony and the DOT, the ALJ is required to reconcile the inconsistency. Massachi v. Astrue, 486 F.3d 1149, 1153-54 (9th Cir. 2007). An ALJ need only resolve conflicts between the VE's testimony and the DOT that are "apparent or obvious," which occurs only when VE testimony is "at odds with" DOT requirements that are "essential, integral, or expected" for a particular occupation. Gutierrez v. Colvin, 844 F.3d 804, 808 (9th Cir. 2016).

**B.  Remand Is Warranted for the ALJ's Step-Five Finding**

Here, the ALJ presented a hypothetical to the VE based on the ALJ's RFC assessment, and the VE testified that Plaintiff could perform several representative jobs existing in significant numbers in the national economy – specifically, store laborer (DOT 922.687-058), food service worker (DOT 319.677-014), and cleaner (DOT 323.687-010). (AR 61-62). The VE stated that her testimony was based on the DOT and her vocational knowledge. (AR 63). The ALJ relied on this testimony in his decision to conclude that Plaintiff is not disabled. (AR 29-30).

Plaintiff contends that the VE's testimony conflicts with reliable vocational sources, including the DOT, which suggest that Plaintiff's limitations render these jobs unavailable. (See Joint Stip. at 5-8, 12-17). Among these limitations is Plaintiff's inability to understand or communicate in English. (Id. at 6, 13). The ALJ never addressed Plaintiff's English inability, except by noting that Plaintiff testified through a Spanish-language interpreter at the hearing. (AR 22). However, it is amply reflected in the record. For example, Plaintiff specifically reported that he could not speak, read, or understand English, and could not "write more than [his] name in English." (AR 267). Plaintiff used an interpreter at his medical examinations and at the hearing before the ALJ, and his hearing counsel stated that Plaintiff does not speak English. (See AR 53, 64, 404, 417). Moreover, Plaintiff testified that the last grade of school he completed was "Junior high in Mexico." (AR 55).

As Plaintiff points out, the DOT classifies two of the occupations identified by the VE (food service worker and cleaner) as language level 2 positions, and it classifies the other occupation (store laborer) as a language level 1 position. DICOT 323.687-010, 1991 WL 672782; DICOT 319.677-014, 1991 WL 672771; DICOT 922.687-058, 1991 WL 688132. This means that all three jobs as classified in the DOT require at least some ability to speak and write in English. See DICOT, App. C., 1991 WL 688702 (defining

language levels).[8]  Plaintiff correctly contends that the DOT thus presents an "apparent conflict" in the record.[9]  See Pinto v. Massanari, 249 F.3d 840, 843 n.1 (9th Cir. 2001) (requirements of Language Level 1 occupations inconsistent with abilities of claimant who could speak Spanish but spoke "very little English," and whom the ALJ found "illiterate in English"); Diaz v. Berryhill, 2018 WL 1187530, at *6 (C.D. Cal. Mar. 7, 2018) ("A plain reading of the DOT's language level 1 definition requires language ability more advanced than someone who cannot speak English."); Oliva-Hernandez v. Berryhill, 2017 WL 6403085, at *3-4 (C.D. Cal. Dec. 14, 2017) (finding ALJ erred in accepting VE's testimony that a

---

[8] A language level 1 position requires that the employee be able to speak and write simple sentences, and a language level 2 position requires the employee to read at a rate of 190 words per minute, write compound and complex sentences properly, and speak clearly and distinctly with correct pronunciation.  DICOT, App. C., 1991 WL 688702.  The DOT does not specify that the "language" must be English, but the Ninth Circuit has reasoned that such a requirement is the "most persuasive reading" of the DOT.  Pinto v. Massanari, 249 F.3d 840, 844 n.2 (9th Cir. 2001).

[9] Plaintiff specifically asserts that an "apparent conflict exists between the general educational development described in the DOT [which encompasses language level classifications] and a marginal education found by the ALJ."  (Joint Stip. at 13, 16).  Because Plaintiff makes this assertion while contrasting his English inability with the language/literacy requirements of the respective occupations defined in the DOT and other sources, the Court construes Plaintiff's argument as raising a conflict between the DOT and the VE's testimony in light of his inability to communicate in English.  (See id.).  Although Plaintiff frames this as a conflict with the ALJ's "marginal education" finding, the Agency considers English language ability as an "education factor."  See 20 C.F.R. §§ 404.1564(b), 416.964(b) ("The term 'education' also includes how well you are able to communicate in English since this ability is often acquired or improved by education"); 20 C.F.R. 404.1564(b)(5), 416.964(b)(5) ("Since the ability to speak, read and understand English is generally learned or increased at school we may consider this an educational factor").

functionally illiterate individual could perform occupations at language level 1); Obeso v. Colvin, 2015 WL 10692651, at *15-16 (E.D. Cal. Apr. 20, 2015) (remanding where the ALJ found a claimant with limited English could perform occupations at language level 1 based on the VE's testimony and "the ALJ did not offer any explanation for her deviation from the DOT"); Salgado v. Astrue, 2011 WL 717251, at *4 (C.D. Cal. Feb. 22, 2011) (same, where the jobs at issue required language level 1 or level 2).

The ALJ erred by failing to address this apparent conflict in light of Plaintiff's inability to communicate in English. See Massachi, 486 F.3d at 1153-54; Pinto, 249 F.3d 840, 846 (9th Cir. 2001) (ALJ erred by failing to clarify how claimant's inability to speak English factored into his analysis that claimant could perform her past relevant work, given that the DOT description required language ability above what the claimant possessed). Indeed, the ALJ does not seem to have considered Plaintiff's language limitation in any respect, despite the requirement to do so. See 42 U.S.C. § 1383(c)(1)(A) (requiring the Commissioner to "specifically take into account any . . . . linguistic limitation of [the claimant] (including any lack of facility with the English language) in determining, with respect to the eligibility of such individual for benefits . . . ."); 20 C.F.R. §§ 404.1564(b), 416.964(b) (providing that the Commissioner will consider a claimant's inability to communicate in English when evaluating the claimant's educational background as a vocational factor "[b]ecause English is the dominant language of the country, [and] it may be difficult for someone who doesn't speak and understand English to

do a job, regardless of the amount of education the person may have in another language [or level of fluency in another language]."). Remand is warranted on this issue.[10]

As for Plaintiff's contentions regarding other vocational sources and limitations,[11] the ALJ was not obligated to address non-DOT sources at the hearing. See Shaibi v. Berryhill, 883 F.3d 1102, 1109 (9th Cir. 2017), as amended (Feb. 18, 2018); Seaberry v. Berryhill, 2018 WL 1425985, at * 6 (C.D. Cal. March 22, 2018). Moreover, Plaintiff's counsel's own convoluted lay analysis of the statistical data from these sources is inadequate to demonstrate that the VE's job numbers were incorrect. See Jose Alfredo G. v. Saul, 2019 WL 6652086, at *6 (S.D. Cal. Dec. 5, 2019) ("Lay assessments alone are insufficient to undermine the VE's analysis; such attempts have been uniformly rejected by numerous courts.") (internal quotation omitted) (collecting cases); Valenzuela v. Colvin, 2013 WL 2285232, at *4 (C.D. Cal. May 23, 2013) (rejecting

---

[10] Plaintiff does not seek an immediate award of benefits, only "remand[] for further proceedings to take [VE] testimony of whether any significant number of jobs exists for an individual of [Plaintiff's] medical-vocational profile." (Joint Stip. at 26). That is the appropriate relief here. See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1100 (9th Cir. 2014) ("[W]e generally remand for an award of benefits only in rare circumstances, where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed.") (internal quotations and citations omitted).

[11] Plaintiff argues, based on information from several vocational sources in the record - including the OOH, O*NET, and ORS - that the jobs identified by the VE do not exist in significant numbers for a person with Plaintiff's education, language ability, exertional level, and limitations in walking, standing, and sitting. (See Joint Stip. at 5-8, 12-17).

12

plaintiff's assessment, in part, because it "was unaccompanied by any analysis or explanation from a vocational expert or other expert source to put the raw data into context"). However, Plaintiff properly raised this issue by submitting additional evidence to the Appeals Council (see AR 347-49, 441-80), and he demonstrates at least that the evidence merits further consideration with a VE on remand, in conjunction with the language conflict addressed above. See Cymande S. v. Berryhill, 2019 WL 4148351, at *3 (C.D. Cal. May 16, 2019) (remanding for consideration of OOH evidence submitted to the Appeals Council); Harris v. Berryhill, 2018 WL 3493778, at *6 (C.D. Cal. July 20, 2018) (same).

**CONCLUSION**

Accordingly, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: March 10, 2020

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

13